UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD D. HOFER,                                  Case No. 17-12526

     Plaintiff,                                  Victoria A. Roberts
v.                                                 United States District Judge

COMMISSIONER OF SOCIAL                             Stephanie Dawkins Davis
SECURITY,                                          United States Magistrate Judge

     Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 13, 15)**

## I.     PROCEDURAL HISTORY

### A.     Proceedings in this Court

On August 4, 2017, plaintiff Richard D. Hofer filed the instant suit.  (Dkt.

1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Victoria A. Roberts referred this matter to the undersigned for the purpose of

reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a

period of disability, disability insurance benefits, and supplemental security

income benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for

summary judgment.  (Dkt. 13, 15).

### B.   Administrative Proceedings

Plaintiff filed an application for a period of disability and disability insurance benefits on September 14, 2014, and filed an application for supplemental security income on September 23, 2014, alleging disability beginning on September 5, 2014.  (Tr. 20).[1]  The claims were initially disapproved by the Commissioner on January 8, 2015.  (*Id.*).  Plaintiff requested a hearing and on June 22, 2016, plaintiff appeared with counsel, before Administrative Law Judge ("ALJ") Patricia S. McKay, who considered the case *de novo*.  (Tr. 20-28).  In a decision dated September 23, 2016, the ALJ found that plaintiff was not disabled.  (Tr. 28).  Plaintiff requested a review of this decision.  (Tr. 154).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on July 30, 2016, denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED** and the findings of the Commissioner be **AFFIRMED**.

---

[1] The Administrative Record appears on the docket at entry number 11.  All references to the same are identified as "Tr. __", referring to the administrative record page number found in the lower right corner of each page.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff, born August 4, 1963, was 51 years old on the alleged disability

onset date.  (Tr. 26).  At the time of his hearing he lived with his disabled wife and

four adult sons. (Tr. 38-39, 52-54).  He has past relevant work as an online

retailer/small business owner selling tobacco products, having last worked in 2010.

(Tr. 26, 40-41).  The ALJ applied the five-step disability analysis and found at step

one that plaintiff had not engaged in substantial gainful activity since September 5,

2014, the alleged onset date.  (Tr. 22).  At step two, the ALJ found that plaintiff's

squamous cell carcinoma of the epiglottis status-post radiation therapy,

hypothyroidism, chronic obstructive pulmonary disease and asthma, and

degenerative joint disease of the right AC joint with bicep tendonitis were "severe"

within the meaning of the second sequential step.  (Tr. 22).  However, at step three,

the ALJ found no evidence that plaintiff's impairments singly or in combination

met or medically equaled one of the listings in the regulations.  (Tr. 23).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC")

as follows:

>   After careful consideration of the entire record, the
>   undersigned finds that the claimant has the residual
>   functional capacity to perform light work as defined in 20
>   CFR 404.1567(b) and 416.967(b) except he is limited to
>   occasional climbing of stairs, crouching, crawling,
>   kneeling, and stooping/bending; must avoid workplace

> hazards such as dangerous, moving machinery and
> unprotected heights, which includes climbing ladders,
> ropes, and scaffolding; must avoid continuous exposure
> to pulmonary irritants; is unable to reach overhead with
> the dominant right upper extremity; and, is limited to
> self-paced work that is not a production rate. The
> claimant also limited to walking up to 100 yards during
> an eight-hour workday and occasional speaking to others
> during the workday.

(Tr. 24). At step four, the ALJ found that plaintiff was unable to perform any past

relevant work. (Tr. 26). At step five, the ALJ denied plaintiff benefits because she

found that there were jobs that exist in significant numbers in the national economy

that plaintiff can perform. (Tr. 26).

     B.   <u>Plaintiff's Claims of Error</u>

Plaintiff first argues that at Step Two, the ALJ should have found his

headaches to be a severe impairment because their frequency and duration

significantly limit his ability to perform basic work activities. (Dkt. 13, at p. 6).

Plaintiff contends that the ALJ found his headaches to be non-severe because he

has been having them since childhood, but plaintiff points out that he testified the

headaches were getting worse in the two years preceding the administrative

hearing. Plaintiff argues that his experiencing headaches since childhood does not

negate or minimize the severity and frequency of the headaches in the two years

leading up to the hearing. (*Id.*).

Second, plaintiff argues that the ALJ erred in her credibility determination. According to plaintiff, the ALJ discounted his credibility because his allegations were not consistent with treatment records and information contained in Exhibit 4E, plaintiff's function report.  (*Id.* at p. 7).  The ALJ also cited plaintiff's lack of difficulty with personal care, as well as the facts that he cooks, cleans, and drives unassisted.  Plaintiff takes issue with the ALJ's reliance on these activities of daily living in discounting his credibility.  First, in his function report, plaintiff stated that he is able to do light housework, laundry, outside maintenance, meal preparation, and washing up, but with frequent breaks.  Second, plaintiff also reported extreme fatigue and needing to take breaks with activity.  (*Id.* at p. 7-8).  Plaintiff says his ability to perform daily activities on a sporadic and intermittent basis does not demonstrate an ability to perform work on a full-time basis.  (*Id.* at p. 8) (citing *Watson v. Gardner*, 381 F.2d 580, 585-86 (6th Cir. 1987); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007); *Bjornson v. Comm'r of Soc. Sec.*, 671 F.3d 640 (7th Cir. 2012).

Third, plaintiff contends that the RFC limitation to walking 100 yards in an eight hour workday is inconsistent with light work.  (*Id.* at p. 9).  Light work involves, among other things, frequent lifting and carrying of objects weighing up to 10 pounds.  (*Id.* at p. 10).  Social Security Rule 83-10 states that since frequent lifting or carrying requires being on one's feet up to two-thirds of the workday, the

full range of light work requires standing or walking for a total of approximately six hours in an eight hour workday.

Finally, plaintiff argues that the record evidence does not support a light work RFC. Rather, the record supports a sedentary RFC, which would render plaintiff disabled under GRID rule 201.14. (*Id.* at p. 10). Plaintiff states that he is unable to perform light work activity on a full-time, continuous basis because of his impairments. (*Id.* at p. 10-11). Plaintiff cites to treatment records in support of his contention that his complaints of extreme fatigue and need to lie down for rest are supported by substantial evidence. (*Id.* at p. 11-13). These treatment records note pain in his shoulder and back, subjective reports of headaches and pain in his mouth, and fatigue. Plaintiff also explains that a consequence of his radiation therapy for epiglottis cancer is dry mouth and that he has developed spasms in his neck following the radiation therapy. (*Id.* at p. 13).

Plaintiff also discusses the vocational expert's testimony, but does not appear to claim any error relating to the same. (*Id.* at 14-15).

C.   Commissioner's Motion for Summary Judgment

The Commissioner argues that there is no error in the ALJ's determination that plaintiff's headaches are a non-severe impairment. (Dkt. 15, at p. 9). The Commissioner points out that the medical records show sporadic headache complaints, and plaintiff has lived with headaches for decades. According to the

Commissioner, plaintiff has not shown any significant work limitations from his headaches which is his burden to do.  (*Id.* at p. 9-10).  Further, because the ALJ assessed some impairments as severe, and continued on with the sequential evaluation considering all of plaintiff's impairments, any error at Step Two is harmless.  (*Id.* at p. 10).

The Commissioner contends that the RFC is supported by substantial evidence.  As the ALJ noted, plaintiff's treating physician, Dr. Kieleszewski, disagreed with plaintiff's application for disability (Tr. 24, 417).  Further, his treatment was conservative and routine; records show plaintiff's lung disease was stable and well-controlled; and there is no medical evidence to support the extreme fatigue plaintiff alleged.  (*Id.* at p. 11-12).

According to the Commissioner, the ALJ reasonably accounted for plaintiff's alleged fatigue even though, as the ALJ noted, there is no medical evidence of serious fatigue.  (*Id.* at p. 13).  Plaintiff had not yet scheduled a sleep study at the time of the hearing, and the record shows no serious heart problems. Further, the Commissioner contends that plaintiff has not shown harm; the ALJ limited plaintiff to walking no more than 100 yards in a workday, and required only self-paced work.  (*Id.* at p. 14).

As to the ALJ's consideration of plaintiff's activities of daily living, the Commissioner argues that the ALJ reasonably considered them as one factor out of

many in assessing credibility.  Regarding plaintiff's contention that his daily activities do not demonstrate the ability to perform work on a full-time basis, the Commissioner first contends that it is not the ALJ's burden to prove a claimant can work; rather, it is plaintiff's burden to show he is disabled.  (*Id.*) (citing *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990)).  Furthermore, the Sixth Circuit has held that daily activities such as personal care, cooking, cleaning, and driving, carry some probative value in assessing limitations.  (*Id.* at p. 15) (citing *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 711 (6th Cir. July 9, 2013); *Maloney v. Comm'r of Soc. Sec.*, 2012 WL 1676683, at **2 (6th Cir. May 15, 2012); *Berry v. Comm'r of Soc. Sec.*, 2008 WL 3271255, at *1-2 (6th Cir. Aug. 8, 2008); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542, 543-44 (6th Cir. 2007)).

Finally, the Commissioner asserts that the ALJ was not required to "blindly accept" plaintiff's subjective complaints.  (*Id.* at p. 16).  In coming to her decision, the ALJ cited opinions, medical findings, medical treatment, daily activities, and plaintiff's subjective complaints.  Thus, the ALJ reasonably came to the conclusion that plaintiff was limited as addressed in the RFC.

## III.   DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely

8

reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may . . . consider the credibility of a claimant

when making a determination of disability."); *Walters*, 127 F.3d at 531

("Discounting credibility to a certain degree is appropriate where an ALJ finds

contradictions among medical reports, claimant's testimony, and other evidence.").

"However, the ALJ is not free to make credibility determinations based solely

upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*,

486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are

conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability

Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.).

Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to

poverty stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do

> basic work activities," benefits are denied without further
> analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding rejecting the existence of disability, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

      C.     <u>Analysis and Conclusions</u>

      1.     Step Two

At step two of the sequential evaluation process, the ALJ must consider

whether a claimant's medically determinable impairment(s) is a severe impairment

and whether the impairment(s) meets the twelve month durational requirement in

20 C.F.R. § 404.1509.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also*

*Simpson v. Comm'r of Soc. Sec*., 344 Fed. Appx. 181, 188 (6th Cir. 2009) ("At step

two, if a claimant does not have a severe medically determinable physical or

mental impairment . . . that meets the durational requirement in § 404.1509 . . . , or

a combination of impairments that is severe and meets the durational requirement,

then [she] is not disabled.").  The applicant bears the burden of establishing the

existence within the administrative record of objective medical evidence

suggesting that the applicant was "disabled" as defined by the Act.  In order to be

classified as severe, an impairment or combination of impairments must

significantly limit the claimant's physical or mental ability to do basic work

activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities, defined in

the regulations as "the abilities and aptitudes necessary to do most jobs," include:

(1) physical functions such as walking, standing, sitting, lifting, pushing, pulling,

reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3)

understanding, carrying out, and remembering simple instructions; (4) use of

judgment; (5) responding appropriately to supervision, co-workers, and usual work

situations; and (6) dealing with changes in routine work settings.

Sixth Circuit precedent establishes that failure to find an impairment severe

at step two of the sequential analysis is not reversible error if the ALJ found

another impairment severe and thus continued with the five-step evaluation.  *See*

*e.g.*, *Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007); *Anthony v. Astrue*,

266 Fed. Appx. 451, 457 (6th Cir. 2008).  If the ALJ continues with the remaining

steps, any error at step two is harmless, so long as the ALJ considered the effects

of all medically determinable impairments, including those deemed nonsevere.

*See e.g.*, *Cobb v. Colvin*, 2013 WL 1767938 at *4 (D. Kan. 2013) ("The

Commissioner is correct that the failure to find that additional impairments are

severe is not in itself cause for reversal.  But this is true only so long as the ALJ

considers the effects of all of the claimant's medically determinable impairments,

both those he deems severe and those not severe.") (internal quotation marks

omitted); *Jackson v. Astrue*, 734 F. Supp. 2d 1343, 1361 (N.D. Ga. 2010) (Where

ALJ identified one severe impairment at step two, the failure to identify additional

severe impairments at step two was harmless error case where the ALJ considered

all of the plaintiff's impairments at other steps as demonstrated by discussion of

testimony and medical history.).

In addressing plaintiff's impairments at Step Two, the ALJ acknowledged

plaintiff's complaint of daily headaches. However, the ALJ also noted that

plaintiff admitted to having headaches since childhood, and that there is no

evidence to establish any related work restrictions. (Tr. 23). The ALJ did not

discuss headaches beyond Step Two. As stated above, failure to consider this

impairment at the remaining steps of the sequential evaluation process would

normally constitute reversible error. However, in this instance, the ALJ's error is

harmless. Although plaintiff at times complained of headaches to his doctors,

there is no medical opinion in the record assessing functional limitations caused by

headaches. *Richard v. Astrue*, 2011 WL 4688788, at *5 (N.D. Ohio Oct. 4, 2011)

(citing *Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146,151 (6th Cir.

1990) ("it is well established that a diagnosis alone does not indicate the functional

limitations caused by an impairment."); *Kocher v. Comm'r of Soc. Sec.*, 2015 WL

7307998, at *5 (S.D. Ohio Nov. 20, 2015), *report and recommendation*

*adopted*, 2015 WL 9489750 (S.D. Ohio Dec. 30, 2015) (quoting *Burch v.*

*Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005) ("when 'there is no evidence in the

record, of any functional limitations as a result of . . . obesity that the ALJ failed to consider,' a remand for further resolution of this issue is unnecessary.").

Where an impairment is not associated with any functional limitations in the record, failure to discuss the impairment after Step Two of the sequential analysis is harmless.  For instance, in *Smith v. Comm'r of Soc. Sec*, the ALJ determined that the plaintiff's brain lesions were nonsevere based on a finding that the lesions had not changed since 2008, and there was no evidence that the plaintiff was limited by any neurological disorder.  *Smith,* 2016 WL 423757, at *6 (E.D. Mich. Jan. 12, 2016), *report and recommendation adopted*, 2016 WL 409316 (E.D. Mich. Feb. 3, 2016).  However, the ALJ had misinterpreted the medical evidence.  *Id.*  The ALJ did not discuss the plaintiff's brain lesions at any point in the decision after Step Two.  *Id.*  Nevertheless, the court held that the ALJ's error was harmless because the plaintiff's neurologist did not diagnose a neurological disease or assess functional limitations as a result of the brain lesions.  *Id.*

Here, the record does not contain a medical opinion on functional limitations due to headaches.  In December 2014, plaintiff complained of having daily headaches for the past 20 years.  (Tr. 403).  The doctor listed chronic headaches with his diagnoses, and stated that the etiology was "uncertain but probably migraine although he is being treated for sinus headaches with Loratadine."  (Tr. 405).  In January 2015, he again complained of daily headaches, and the doctor

noted that he often feels relief with massage of the neck and base of his skull.  (Tr. 416, 420).  It is in this same January 2015 treatment record that his treating physician states that he disagrees with plaintiff's application for disability until he becomes compliant, undergoes testing, and quits smoking.  (Tr. 417).  This is the only discussion of headaches in the medical record.[2]  In addition to the lack of objective evidence, the ALJ also properly discounted plaintiff's subjective complaints, as discussed below.  Because there is no evidence of any functional limitations due to headaches, any error at Step Two is harmless, as was the case in *Smith*, *supra*.

### 2.    Credibility

"Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ."  *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).  "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379

---

[2] Except for the State agency single decision-maker, who considered migraines as a non-severe impairment.  (Tr. 94).  The ALJ properly did not consider this opinion.  (Tr. 26, n. 1).

(6th Cir. 2001).  The ALJ is not required to accept the testimony of a claimant if it

conflicts with medical reports, the claimant's prior statements, the claimant's daily

activities, and other evidence in the record.  *See Walters v. Comm'r of Soc. Sec.*,

127 F.3d 525, 531 (6th Cir. 1997).  Rather, when a complaint of pain or other

symptoms is in issue, after the ALJ finds a medical condition that could reasonably

be expected to produce the claimant's alleged symptoms, s/he must consider "the

entire case record, including the objective medical evidence, statements and other

information provided by treating or examining physicians . . . and any other

relevant evidence in the case record" to determine if the claimant's claims

regarding the level of his pain are credible.  SSR 96-7p, 1996 WL 374186, at *1;

*see also* 20 C.F.R. § 416.929.  "Consistency between the plaintiff's subjective

complaints and the record evidence tends to support the credibility of the

[plaintiff], while inconsistency, although not necessarily defeating, should have the

opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th

Cir. 2011).

　　　The undersigned finds no compelling reason to disturb the ALJ's credibility

determination.  The ALJ found plaintiff's statements not entirely consistent with

the medical evidence.  (Tr. 26).  The ALJ addressed plaintiff's complaints

individually as they related to his impairments, and discussed inconsistencies with

the record (and in doing so providing substantial evidence for the determination).

For example, the ALJ stated,

> The claimant's application for benefits was based on complaints of chronic obstructive pulmonary disease, asthma, throat cancer, and right shoulder pain (his other complaints are related to nonsevere impairments). The claimant testified that he is unable to do anything without becoming extremely tired. He also claimed to lay down four to five times a day for fifteen to twenty minutes each. These allegations are not consistent with the treatment records. In fact, the claimant was advised to exercise more, and he told his doctors he had improvement with exercising. Furthermore, the claimant admitted that he has no difficulty with personal care and he cooks, cleans, and drives unassisted (4E).

(Tr. 24-25). The ALJ is correct that complaints of fatigue are inconsistent with treatment notes, as there is only one note which records the complaint among many others which make no mention of the complaint. (Tr. 366). Further, the ALJ acknowledged plaintiff's complaints of problems with the right shoulder. However, the ALJ noted plaintiff still retained the ability to perform work as described in the RFC and plaintiff had not been undergoing treatment for the shoulder, which indicates that the problem is not as serious as alleged. (Tr. 25). The ALJ discussed plaintiff's restrictions on exposure to pulmonary irritants and talking to others due to his respiratory impairments, but noted that plaintiff had been noncompliant with numerous doctors' recommendations to quit smoking. (Tr. 25). Indeed, plaintiff's doctors informed him that quitting smoking would

improve his health and help with his voice and he expressed an intention to quit. (Tr. 258).   However, later plaintiff said he was not ready to quit, (*Id.*; Tr. 366). Plaintiff denied dyspnea on his alleged onset date, (Tr. 248), complained of shortness of breath with mild to moderate exertion (Tr. 405), and in January 2015 his physician noted dyspnea with exertion (Tr. 420).  The ALJ discussed plaintiff's complaints of dyspnea, but noted that there are no disabling limitations related to the complaint, which is correct.  (Tr. 25).

The ALJ's discussion demonstrates that she considered plaintiff's complaints, the objective medical evidence, and the consistency of his complaints with his own statements to physicians and with the record evidence.  The ALJ's credibility determination thus comports with the regulation.

Plaintiff's additional argument that the ALJ failed to properly assess his credibility because he relied on his activities to demonstrate the ability to perform full-time work is not well-taken.  Contrary to plaintiff's contention and as demonstrated above, the ALJ did not simply rely on plaintiff's activities in assessing credibility.  Indeed, the ALJ's discussion shows that he considered his activities of daily living in conjunction with the consistency of his statements regarding fatigue with the medical evidence and as evidence that he is not as limited as alleged.  Moreover, the ALJ did not rely on his activities of daily living

in discussing all of plaintiff's complaints; rather, the ALJ found his activities relevant in regard to his complaints of fatigue.

The authority on which plaintiff relies does not direct a different finding. Plaintiff cites a 1967 case, *Watson v. Gardner*, 381 F.2d 580 (6th Cir. 1967).  In *Watson*, the court stated that activities of daily living such as shopping, dishwashing, and driving, do not necessarily indicate the ability to engage in substantial gainful activity.  *Id.* at 586.  However, the court did not determine error for discussing such activities.  Indeed, the Commissioner did not merely rely on the listed activities, instead the activities were used as one factor in coming to the decision.  *Id.* at 584.

In *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007), the court found the ALJ's credibility determination incorrect, and remanded the case.  The ALJ in that case relied on three reasons for finding the plaintiff's complaints not credible, (1) lack of objective medical evidence, (2) plaintiff's daily activities, and (3) a physician's testimony encouraging exercise.  *Id.* at 248.  As to the first, the court discussed that the nature of fibromyalgia—plaintiff's impairment—does not lend itself to objective findings, and by focusing on purely objective evidence, the ALJ did not discuss the lengthy course of treatment, the numerous prescribed medications, the reasons for the prescriptions, or the side effects.  *Id.*  Second, although the plaintiff's daily activities included cleaning, caring for her dogs, and

driving, these activities were not found comparable to typical work activities. Moreover, the ALJ mischaracterized the scope of the activities performed. For example, the plaintiff engaged only in light housekeeping, caring for her dogs meant opening the door to let them out, and she did very little driving. *Id.* at 249. As to the third reason, the court stated that the fact that a patient is encouraged to exercise does not reflect the manner in which such activity could aggravate symptoms. *Id.*

This case is distinguishable from *Rogers*. First, this is not a case involving complaints of pain due to fibromyalgia, which may not be represented in objective evidence. (Tr. 366). Complications from back or shoulder pain, COPD, and asthma, for example, can be and often are represented in objective evidence. As to plaintiff's activities, the ALJ did not mischaracterize plaintiff's activities. Plaintiff stated that he took care of his wife and youngest son, both of whom are disabled (Tr. 52, 54), and that he took care of meals and the household chores. (Tr. 201). He also stated he does the yard work, which takes three hours to complete, and that he has no problem with personal care at all. (Tr. 201, 202). Unlike the plaintiff in *Rogers*, whose activities were short-lived and not very exertional, here plaintiff's activities require larger time commitments, taking care of both his wife and his son (by doing more than opening a door for them), as well as the household chores. These activities are more than minimal.

23

Further, the regulations specifically require ALJs to consider daily activities as part of their credibility analysis, and doing so is not error. Soc. Sec. Ruling 96-7p, 1996 WL 374186; *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 532 (6th Cir.1997) ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments."); *Yackley v. Comm'r of Soc. Sec.*, 2017 WL 3837274, at *11 (E.D. Mich. Aug. 31, 2017) ("[I]t is entirely appropriate for the ALJ to consider the claimant's daily activities, among other factors, when determining his work function—indeed, the regulations direct the ALJ to do so."); *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.2d 532, 542 (6th Cir. 2007) (affirming credibility analysis where ALJ noted daily activities such as light cooking, laundry, shopping, and personal care, did not reflect disabling disorder). For example, in *Blacha*, the Sixth Circuit found that the ALJ had "an adequate basis to discount [the claimant's] credibility" in part because "some of [his] activities were inconsistent with his claims of disabling pain." *Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). "Especially significant," the court found, was the claimant's ability to drive, because it showed relatively good use of the arms and that he was able to turn his neck. *Id.*

Because the ALJ considered daily activities as only part of the credibility determination, and because the ALJ's credibility determination is supported by

substantial evidence as discussed above, the undersigned finds no basis on which
to disturb the ALJ's determination.

3. RFC

20 C.F.R. § 404.1545 (2012) provides that the Residual Functional Capacity
is "the most you can still do despite your limitations." In the instant case, the ALJ
assessed plaintiff's RFC as follows:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform light work as defined in 20
> CFR 404.1567(b) and 416.967(b) except he is limited to
> occasional climbing of stairs, crouching, crawling,
> kneeling, and stooping/bending; must avoid workplace
> hazards such as dangerous, moving machinery and
> unprotected heights, which includes climbing ladders,
> ropes, and scaffolding; must avoid continuous exposure
> to pulmonary irritants; is unable to reach overhead with
> the dominant right upper extremity; and, is limited to
> self-paced work that is not a production rate. The
> claimant also limited to walking up to 100 yards during
> an eight-hour workday and occasional speaking to others
> during the workday.

(Tr. 24). The undersigned concludes that the ALJ did not err in fashioning
plaintiff's RFC. Substantial evidence supports the RFC.

To account for plaintiff's right shoulder problems, the ALJ restricted
plaintiff to no overhead reaching with the right extremity. (Tr. 25). An April 2014
x-ray showed only mild degeneration at the AC joint, and plaintiff was mildly
tender at the AC joint. (Tr. 368). The same was true in December 2014. (Tr.

407).  Considering that the medical evidence showed only mild problems with the

shoulder, the "no overhead reaching" limitation is more restrictive than it could

have been and adequately supported by the record.

To accommodate plaintiff's respiratory impairments, "remnants of his throat

cancer," and fatigue form hypothyroidism, as well as all impairments in general,

the ALJ limited plaintiff to walking 100 yards, occasional postural activities, self-

paced work, and restrictions on exposure to pulmonary irritants and talking to

others.  (Tr. 25).  The record does not support disabling limitations for the above

impairments or limitations beyond those contemplated in the RFC.  Plaintiff's

COPD and asthma also do not cause disabling limitations.  Despite plaintiff's

continued smoking, the majority of records starting from the alleged onset date

demonstrate that plaintiff's COPD appears to have been stable and controlled.  (Tr.

418, 423, 424, 426).  COPD was noted to be uncontrolled in December 2015, (Tr.

437), but by March 2016, his breathing was doing better.  (Tr. 442).  This record

evidence on COPD does not show that plaintiff is more limited than stated in the

RFC.  *See Hill v. Comm'r of Soc. Sec.*, 560 Fed. Appx. 547, 551 (6th Cir. 2014)

("[D]isability is determined by the functional limitations imposed by a condition,

not the mere diagnosis of it.").  Regarding his throat and dry mouth problems

stemming from his cancer treatment, the record contains no functional limitations

to account for these residual effects.

Plaintiff complained of dyspnea, but there are no disabling limitations related to the complaint.  Indeed, he denied dyspnea on his alleged onset date, (Tr. 248), complained of shortness of breath with mild to moderate exertion (Tr. 405), and in January 2015 his physician noted dyspnea with exertion (Tr. 420).  Notably, no physician opined on any functional limitations.  Nevertheless, the ALJ still limited plaintiff to avoiding hazards such as dangerous, moving machinery and unprotected heights included climbing ladders, ropes, and scaffolding.  (Tr. 24).

Plaintiff underwent a stress test which was negative.  (Tr. 366).  He had a "2D ECHO" test in February 2015 which showed an ejection fraction of 55% (minimally decreased) with only trace mitral regurgitation.  (Tr. 427).  He also underwent EKGs which showed no acute ischemic changes.  (*Id.*).  These test results do not indicate that plaintiff is more limited than stated in the RFC.

Plaintiff does not point to any medical evidence in the record supporting any claim for a more restrictive RFC or the imposition of additional functional limitations.  *See Green v. Comm'r of Soc. Sec.*, 2013 WL 5516046, at *7 (E.D. Mich. Oct. 4, 2013) ("Plaintiff has provided no evidence to suggest the existence of any functional limitations that the ALJ should have included.  Therefore, the ALJ did not err when she chose not to include any such limitations in Plaintiff's RFC.").  Further, the undersigned notes again that in January 2015, plaintiff's treating physician stated he disagreed with plaintiff's application for disability

benefits until he becomes compliant, undergoes testing, and quits smoking.  (Tr.

417).  As demonstrated, plaintiff has not become more compliant and has not quit

smoking.  In light of the evidence just addressed, the ALJ's RFC is supported by

substantial evidence.

Plaintiff argues that the limitation to walking 100 yards per workday is

inconsistent with light work because light work requires walking for six hours in a

workday.  Under the regulations,

> [l]ight work involves lifting no more than 20 pounds at a
> time with frequent lifting or carrying of objects weighing
> up to 10 pounds.  Even though the weight lifted may be
> very little, a job is in this category when it requires a
> good deal of walking or standing, or when it involves
> sitting most of the time with some pushing and pulling of
> arm or leg controls.

20 C.F.R. § 404.1567(b).

Notably, the regulation does not indicate that a job in the light work category

requires actually walking more than 100 yards in a workday, or walking for a full

six hours.  Rather, the regulation provides alternative six hour requirements: a

good deal of walking or standing, <u>or</u> sitting most of the time with some pushing or

pulling.  Thus, it would seem that such a limitation does not automatically preclude

light work.  In addition, there are a number of cases in which the ALJ further

limited the light work RFC to include a 100 yard walking limitation, and no

concern was raised.  *Pickell v. Comm'r of Soc. Sec*., No. 14-CV-12824, 2015 WL

5138741, at *2 (E.D. Mich. Sept. 1, 2015) (RFC so limited, no discussion that 100 yards is inconsistent with light work); *Brooks v. Astrue*, No. 11-CV-12486, 2012 WL 3870537, at *8 (E.D. Mich. July 5, 2012), *report and recommendation adopted sub nom. Brooks v. Comm'r of Soc. Sec.*, 2012 WL 3870532 (E.D. Mich. Sept. 6, 2012) (same); *Wilson v. Comm'r of Soc. Sec.*, No. 5:09CV130, 2010 WL 424969, at *7 (N.D. Ohio Jan. 26, 2010) (same). Plaintiff cites no case authority for the proposition that the 100 yard limitation is itself inconsistent with a light work RFC. The undersigned knows of no such authority.

Further, the vocational expert gave no indication that the 100 yard limitation was inconsistent with a light work RFC. On questioning from plaintiff's counsel, the vocational expert explained that the jobs found that exist in significant number in the economy—hand packer, hand assembler, and tester (Tr. 68)—are performed at benches or tables, and allow the opportunity to sit or stand. (Tr. 75). The expert indicated that the reason these jobs are considered "light work" is because of the weight lifting requirement of 20 pounds. (Tr. 76). To the extent plaintiff is arguing that he cannot walk even 100 yards in a workday, the jobs found provide another reason why, if there is any error it is harmless: the jobs do not require any significant walking at all, let alone 100 yards. Indeed, plaintiff could sit all day in these jobs if he wished. (Tr. 75).

For the foregoing reasons, the undersigned concludes that the RFC is supported by substantial evidence.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED** and the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 15, 2018                      s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 15, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7850
tammy_hallwood@mied.uscourts.gov